IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER A. LYNCH, | \| | |
| | \| | |
| Plaintiff, | \| | Civil Action No.: |
| v. | \| | 7:14-CV-0024-HL-TQL |
| | \| | |
| SHARON LEWIS, M.D., and | \| | |
| BILLY NICHOLS, M.D., | \| | |
| | \| | |
| Defendants. | \| | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S "MOTION FOR LEAVE TO AMEND AND TO ADD TO INJUNCTION"**

**COME NOW** Dr. Sharon Lewis, Statewide Medical Director for the Georgia Department of Corrections (GDC), and Dr. Billy Nichols, State Medical Director for Georgia Correctional HealthCare, defendants in the above-entitled action ("Defendants"), by and through counsel, Attorney General for the State of Georgia, and file this Response to Plaintiff's "Motion for Leave to Amend and to Add to Injunction" (Doc. 36). For the reasons that follow, Plaintiff's motion should be denied.

**I.   PROCEDURAL HISTORY**

Plaintiff, a Georgia Department of Corrections (GDC) inmate being housed at Valdosta State Prison (VSP), filed the complaint in this lawsuit (the "Complaint") on February 24, 2014. (Doc. 1). In her[1] Complaint, Plaintiff asserts that she is a transsexual who is in need of treatment – in particular, hormone therapy – for her condition, which she identifies as Gender Identity Disorder (GID). (Doc. 1, p. 4). She contends that she was informed by medical staff at VSP that Drs. Sharon Lewis and Billy Nichols "made the decision not to permit [her] to be treated for

---

[1] The Court has instructed Defendants to use feminine pronouns when referring to Plaintiff in filings with the Court. (Doc. 11, p. 3 n. 3).

1

GID" based on a GDC policy that distinguishes between transsexuals that were already receiving hormone therapy prior to incarceration and transsexuals that were not. (Doc. 1, p. 6). Plaintiff, who acknowledges that she was not receiving hormone therapy under a doctor's care prior to her incarceration, claims that she wrote letters to both of them in which she described her condition and symptoms and asked them to permit her to receive treatment despite the policy, but she did not hear back and has not received treatment. (Doc. 1, p. 7; Doc. 1-3, p. 1).

The Magistrate Judge screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and, on March 24, 2014, issued an Order recommending that Plaintiff be permitted to proceed on her Eighth Amendment claims but dismissing Plaintiff's equal protection claim, state law claim, and "Declaration of Human Rights" claim.[2] (Doc. 11, p. 2). On April 17, 2014, Plaintiff filed a motion seeking to amend her Complaint (hereinafter, Plaintiff's "First Motion to Amend") to add another Eighth Amendment claim against Defendants for alleged deliberate indifference to a serious medical need based on the allegation that Defendants purportedly "conspired" to deny Plaintiff an "evaluation" and thereby "have provided grossly inadequate care" to Plaintiff. (Doc. 18). Defendants filed a response to Plaintiff's first motion to amend, taking the position that, because Plaintiff had not yet amended her Complaint, and because she sought to amend within twenty-one days of mailing the summons, complaint, and a request to waive personal service to Defendants, Plaintiff is entitled to do so pursuant to Fed. R. Civ. P. 15(a)(1)(A).[3] (See Doc. 33). The Court has not yet ruled on Plaintiff's First Motion to Amend.[4]

---

[2] The Magistrate Judge's recommendation was subsequently adopted by the Court. (Doc. 27).
[3] Defendants requested, however, that Plaintiff's proposed amendment, which seeks to add a constitutional claim based solely on the allegation that Defendants engaged in a "conspiracy" which purportedly resulted in "grossly inadequate care," be screened pursuant to 28 U.S.C. § 1915A. (Doc. 33, pp. 2-3).
[4] Defendants have since filed a motion to dismiss Plaintiff's Complaint. (Doc. 34).

Plaintiff has now filed a second motion to amend her Complaint (hereinafter, Plaintiff's "Second Motion to Amend"), in which she seeks leave to add yet another count of deliberate indifference to a serious medical need against Defendants. (Doc. 36). Plaintiff alleges, in particular, that Drs. Lewis and Nichols "instructed the medical staff at Valdosta State Prison . . . to deny [her] access to the sports bra usually supplied." (Id., p. 2). She contends that she has "observable breast tissue" and that she was "sized at about a B-34" by members of the medical staff at VSP. (Id.) She further opines that there are "obvious medical reasons behind why natural born women are advised by their physicians to wear a bra" and that the "medical risks and obvious reasons for a bra" also exist "in the case of a transsexual," although she does not identify any such "medical reason" or "risk" in her case or even generally. (Id.) Plaintiff avers that the defendants acted with "deliberate indifference" by not providing her with a bra even though "she needs one." (Id., p. 3). Plaintiff's Second Motion to Amend also seeks to add a claim for violation of the Fourteenth Amendment's Equal Protection Clause. She contends specifically that she is being "discriminated against" because, although no inmates at VSP, a male institution, are provided with bras, some inmates "at other camps" receive bras. (Id.)

II.   ARGUMENT AND CITATIONS TO AUTHORITY

A party may amend its pleading once as a matter of course within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule (b), (e), or (f), whichever is earlier. See Fed. R. Civ. P. 15(a). A party seeking to amend a complaint after having previously done so or after a responsive pleading has been filed may amend the complaint "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Id.

3

Courts have recognized that Rule 15(a) "severely restricts" a district court's discretion to deny leave to amend. See, e.g., Sibley v. Lando, 437 F.3d 1067, 1073 (11th Cir. 2005). However, leave to amend can properly be denied under circumstances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Equity Lifestyle Properties, Inc. v. Florida Mowing and Landscape Service, Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (citation omitted); see also Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC, 421 F.3d 1227 (11th Cir. 2005). Importantly, an amendment is futile "when the complaint as amended would still be properly dismissed." See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (quoting Thomas v. Cockrell, 510 F. 3d 1307, 1310 (11th Cir. 2007)).

As discussed below, both of Plaintiff's proposed constitutional claims are futile, as they would be properly dismissed upon a Rule 12(b) motion. Accordingly, Plaintiff's request for leave to amend his Complaint to add such claims should be denied.

### A.  PLAINTIFF'S PROPOSED EIGHTH AMENDMENT CLAIM IS FUTILE.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted). To establish deliberate indifference, a plaintiff must show:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. See, e.g., Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010). Deliberate indifference, therefore,

requires more than a finding of mere negligence or even medical malpractice. See, e.g., Estelle, 429 U.S. at 106. Instead, the evidence must show acts or omissions "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, permitting Plaintiff to proceed with his proposed Eighth Amendment claim would be futile, as his allegations fail to establish any of the requisite elements of a medical deliberate indifference claim. While Plaintiff makes the conclusory allegation that she "needs" a bra, she does not even to allege that her purported "need" amounts to a "serious medical need;" nor does she offer any facts from which it could be inferred that she has a "serious medical need" for a bra. (See generally, Doc. 36). Plaintiff likewise does not and cannot point to a risk of serious harm that she faces as a result of being denied a bra, and her conclusory allegation that there are "medical risks" associated with not wearing a bra generally is wholly unsubstantiated by any factual claims and would not be entitled to be presumed true in a motion brought pursuant to Fed. R. Civ. P. 12(b). See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 884 (2009) (a court is not required to accept a plaintiff's legal conclusions); Sinaltrainal v. The Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (unwarranted deductions of fact are not entitled to be assumed true for purpose of testing the sufficiency of a plaintiff's allegations). Indeed, Plaintiff fails even to identify what those "medical risks" are or, assuming they existed, that she is faced with them. Finally, Plaintiff does not and cannot allege that Defendants were aware of a serious risk of harm to her in connection with any denial of a bra – indeed, she does not even allege that they are aware that she has a "medical need" for a bra – or that such denial, assuming it occurred, amounted to more than medical malpractice. See, e.g., Farrow, 320 F.3d at 1243.

Because Plaintiff fails to allege an Eighth Amendment claim in connection with what she refers to as the "bra issue," her motion for leave to add such a claim to her Complaint should be denied.

### B. PLAINTIFF'S PROPOSED EQUAL PROTECTION CLAIM IS FUTILE.

Under the Equal Protection Clause, the government must treat similarly situated people in a similar manner. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an equal protection claim, a plaintiff must demonstrate that (1) she is similarly situated with others who received more favorable treatment; and (2) this discriminatory treatment was based on some constitutionally protected interest, such as race or religion. See, e.g., Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). "'[I]f a law neither burdens a fundamental right nor targets a suspect class,' it does not violate the Fourteenth Amendment's Equal Protection Clause . . . 'so long as it bears a rational relation to some legitimate end.'" Rivera v. Allin, 144 F.3d 719, 727 (11th Cir. 1998) (quoting Romer v. Evans, 517 U.S. 620, 631 (1996)).

Here, Plaintiff claims that Defendants have "discriminated against her" by denying her a bra "because she is a transsexual." (Doc. 36, pp. 2-3). She admits that "there are no transsexual inmates at VSP permitted bras" but claims that there are inmates "at other camps" "who have been permitted bras." (Id., p. 2). Plaintiff's allegation that some unidentified "inmates" at a separate and unidentified "camp" have been permitted to wear a bra is insufficient to establish that "similarly situated" individuals have received more favorable treatment than her. Indeed, Plaintiff does not make clear the nature of those other "camps," which may differ in one or many ways from VSP; nor does she make clear the circumstances surrounding the decisions (if any such decisions were made) to permit some inmates at other "camps" to wear a bra. To the extent that the "other camps" to which she is referring are women's prisons, it is clear that security and

6

other concerns differ between men's and women's institutions and, as a result, male and female inmates are not necessarily similarly situated.  See, e.g., Prince v. Endell, 78 F.3d 397, 398 (8th Cir. 1996) (no violation of equal protection clause based on differences between what types of property female inmates were allowed to receive and possess in prison versus male inmates, as male and female inmates were housed at different institutions with different security concerns and are not similarly situated).

Moreover, transsexuals are not part of a "suspect class" for purposes of equal protection analysis, see, e.g., Rush v. Johnson, 565 F. Supp. 856, 868-869 (N.D. Ga. 1983), and Plaintiff cannot demonstrate the absence of a legitimate interest of prisons in regulating the types of clothing issued to and worn by inmates.  See Hood v. Dept. of Children & Families, 2014 U.S. Dist. LEXIS 24367, 27-28 (M.D. Fla. Feb. 26, 2014) (finding that prison administrators had a rationale, non-arbitrary basis for precluding transsexual inmate housed in male facility from wearing female clothing and observing that "the Court has found no authority indicating that a transgender person has the right to choose the clothing worn while confined or that the facility is constitutionally obligated to purchase all the clothing and feminine products requested.")  See also, Murray v. United States Bureau of Prisons, 106 F.3d 401 (6th Cir. 1997) (transsexual prisoner not entitled to wear clothing of his choice); Pargo v. Elliott, 894 F. Supp. 1243, 1280 (S.D. Iowa 1995) ("Prison regulations regarding clothing, jewelry, and makeup are rationally related to legitimate state interests in security."); Jones v. Warden of Stateville Corr. Ctr., 918 F. Supp. 1142 (N.D. Ill. 1995) ("Neither the Equal Protection Clause nor the First Amendment arguably accord [Plaintiff] the right of access to women's clothing while confined in a state prison."); Star v. Gramley, 815 F. Supp. 276 (C.D. Ill. 1993) (provision of female clothing to

transsexual prisoner would be unduly burdensome for prison officials and would make little fiscal sense).

Because Plaintiff's proposed allegations fail to state an equal protection claim, an amendment to add such a claim would be futile and, accordingly, her request for leave to amend her Complaint should be denied.

### C. PLAINTIFF'S REQUEST TO "ADOPT THE BRA ISSUE" INTO HER MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED.

In addition to seeking leave to amend her Complaint, Plaintiff "urges this Court to adopt the bra issue into Plaintiff's Motion for Preliminary Injunction." (Doc. 36, pp. 3-4). To the extent Plaintiff is seeking an order for immediate injunctive relief compelling Defendants to provide Plaintiff with a bra, her request should be denied. As discussed at length above, Plaintiff's allegations regarding "the bra issue" fail even to state a claim for relief, and, as demonstrated in Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, Plaintiff has not shown, nor can she show, a likelihood of success on the merits with respect to her existing claims. (See Doc. 32, pp. 4-5). Nor does Plaintiff even allege, much less demonstrate, that she faces a risk of irreparable harm (or any harm, for that matter) if she is not provided with a bra. Because she has not demonstrated and cannot demonstrate any entitlement to the drastic remedy of preliminary injunctive relief, Plaintiff's request to add "the bra issue" to her pending motion for preliminary injunction, as well as her request for "leave of this Court to file a Motion for Preliminary Injunction concerning the bra claim" (Doc. 36, p. 4), should be denied.

### CONCLUSION

Based on the reasons stated and authorities cited, Defendants respectfully request that Plaintiff's "Motion for Leave to Amend and to Add to Preliminary Injunction" be denied.

Respectfully submitted this 3rd day of June, 2014.

        SAMUEL S. OLENS 551540
        Attorney General

        KATHLEEN M. PACIOUS 558555
        Deputy Attorney General

        DEVON ORLAND 554301
        Senior Asst. Attorney General

        /s/ Deborah Nolan Gore
        DEBORAH NOLAN GORE 437340
        Asst. Attorney General

        Attorneys for Defendants

Please Address Communications To:
Deborah Nolan Gore
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
E-mail:  dgore@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed **DEFENDANTS' RESPONSE TO PLAINTIFF'S "MOTION FOR LEAVE TO AMEND AND TO ADD TO PRELMINARY INJUNCTION"** with the Clerk of Court using the CM/ECF system and served the same on Plaintiff by depositing a copy thereof, postage prepaid, in the United States Mail, properly addressed to the following:

Christopher A. Lynch
GDC # 1000768589
Valdosta State Prison
P.O. Box 310
Valdosta, GA 31603

This 3rd day of June, 2014.

/s/ Deborah Nolan Gore
Georgia Bar No. 437340
Assistant Attorney General
Attorney for Defendants