IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

CHRISTOPHER A. LYNCH,     :
                                :
           Plaintiff,     :
                                :
          VS.          :
                                :     7 : 14-CV-24 (HL)
SHARON LEWIS, M.D., and     :
BILLY NICHOLS, M.D.,     :
                                :
          Defendants.     :

## ORDER and RECOMMENDATION

Presently pending in this action brought pursuant to 42 U.S.C. § 1983 are two motions to dismiss filed on behalf of the Defendants (Docs. 34, 53), and Plaintiff's Motion for Reconsideration (Doc. 42), Motion to Amend (Doc. 47) and Motion to Appoint Counsel (Doc. 62). Plaintiff, presently confined at Valdosta State Prison, filed this action in 2014 asserting that she was being denied medical treatment for her transgender condition.[1]  (Doc. 1).   Plaintiff asserts that she is a male to female transsexual who is in need of treatment, especially hormone therapy, for her Gender Identity Disorder ("GID").   *Id.*

***Motion for Reconsideration (Doc. 42)***

In her Motion for Reconsideration filed on June 5, 2014, the Plaintiff asks the Court to reconsider her Motion for Appointment of Counsel and her Motion for Subpoenas.   Plaintiff's Motion for Reconsideration is **GRANTED**.   The Court deals herein with Plaintiff's renewed request for the appointment of counsel.   *See below*.   Also, the Court notes that discovery has been stayed in this matter pending the resolution of the Defendants' initial Motion to Dismiss (Docs. 35, 39), and thus any motion for subpoenas must be denied at this time.

---

[1] The Court refers to Plaintiff as she or her in recognition of Plaintiff's self-identification.

***Motion to Clarify and Motion to Amend (Doc. 47)***

In a Motion to Clarify Allegations of the Complaint and/or Leave to Amend, the Plaintiff seeks to clarify the allegations of her Complaint.   Specifically, the Plaintiff seeks to clarify that her "allegations are that I have, and continue to be, 'denied any and all treatment' as proscribed [sic] by the Standards of Care and affirmed by the American Medical Association".   (Doc. 47-1, p. 3).   To the extent that Plaintiff seeks to clarify her allegations as set forth in her Complaint and Amended Complaint, this motion is **GRANTED**.   The Court finds that Plaintiff has not presented any new claims but is merely clarifying her original claims, and thus Plaintiff's Motion to Amend is accordingly **DENIED**.

***Motion to Appoint Counsel (Doc. 62)***

Plaintiff has once again petitioned this court to appoint legal counsel to represent her in the above-styled proceeding brought pursuant to 42 U.S.C. § 1983.   The Court has previously indicated that on its own motion it will consider obtaining legal representation for the Plaintiff if and when it becomes apparent that such legal assistance is required to avoid prejudice to her rights. (Doc. 12).   Thus far, Plaintiff has clearly set forth her contentions.   Plaintiff has not alleged any change in the case such that exceptional circumstances now exist to warrant appointment of legal counsel and the Court is of the opinion that legal assistance is not now required.   Accordingly, Plaintiff's Motion for Appointment of Counsel is **DENIED** at this time.

***Motions to dismiss (Docs. 34, 53)***

Defendants have filed two (2) motions to dismiss, the first of which seeks dismissal of Plaintiff's original Complaint and the second of which seeks dismissal of Plaintiff's amended Complaint.   The Court notified Plaintiff of the filing of Defendants' motions to dismiss and

directed her to respond thereto within thirty (30) days of the Court's orders.   (Docs. 39, 54).   The

Plaintiff has filed responses to the Defendants' motions.   (Docs. 46, 50, 61).

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual

allegations accepted as true, fails to "raise a right to relief above the speculative level".   *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

The key to proper consideration of a motion to dismiss after *Twombly* is plausibility, as the

"well-pled allegations must nudge the claim across the line from conceivable to plausible."

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009).   Although the Court must

accept as true all of the factual allegations in the Complaint, this standard does not apply to legal

conclusions in the Complaint.   "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

It is well settled that "[a] prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates the Eighth Amendment."   *Farmer v. Brennan*, 511 U.S. 825,

828-829 (1994).   "[T]o survive a motion to dismiss, a cause of action for deliberate indifference

must adequately plead the existence of '(1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation.'"   *Alsobrook v. Alvarado*, 2013 WL

6246383 (S.D.Fla. Dec. 3, 2013), *quoting Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th

Cir. 1995).  "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

In her Complaint, the Plaintiff alleges that she is a transsexual inmate, and that Defendants Sharon Lewis, Medical Director for the Georgia Department of Corrections, and Billy Nichols, the State Medical Director for Georgia Correctional HealthCare, are violating her Eighth Amendment rights by refusing to approve treatment for her Gender Identity Disorder ("GID").   Plaintiff asserts that Georgia Department of Corrections ("GDOC") policy provides for the maintenance of treatment for GID when that treatment had been initiated prior to an inmate's incarceration in the GDOC system.  *See* S.O.P. VH47-0006, Doc. 1-2, pp. 11-13 ("The general policy will provide 'maintenance' of the inmate/probationer's transgender status but not move the medical or surgical treatment any further along the continuum of transgender changes."). As Plaintiff had not begun physician authorized GID treatment prior to her incarceration, GDOC policy apparently does not provide for treatment initiation.

Plaintiff alleges that she began illicit hormone therapy when she was 15 years of age.   She further asserts that the American Medical Association sets out hormone therapy and surgery as the treatments "provid[ing] the necessary relief for the transsexual patient", and that psychotherapy is not considered a treatment for GID.   (Doc. 1, p. 5).   Plaintiff alleges that the denial of her requested treatment, specifically hormone therapy, has resulted in numerous physical ailments including nausea, dizziness, headaches, and vomiting, and mental illness in the form of anxiety, depression, and psychological breakdown.   Plaintiff also claims that the denial of the requested treatment has resulted in her "serious preoccupation with genital mutilation and self-castration"

and attempted "self-mutilation" of her wrist, arm, thigh, and genitals.   After an initial review under 28 U.S.C. § 1915A, the Court allowed Plaintiff's Eighth Amendment claims to proceed for further factual development.   (Docs. 11, 27).

In her amended Complaint, the Plaintiff added a claim that the Defendants "conspire[d] to deny even an evaluation to the Plaintiff inacord [sic] with policy which is based upon professional standards of care published by the World Professional Association for Transgender Health, and thereby having provided grossly inadequate care which has prolonged the suffering of the Plaintiff."   (Doc. 18).

According to her Complaint, Plaintiff arrived at Valdosta State Prison on July 23, 2013, and began seeking an official diagnosis and treatment for GID.   (Doc. 1, p. 5).   She spoke with counselors and facility physician Dr. Moody about her physical and mental symptoms following the discontinuation of apparently self-administered hormone therapy.   On August 5, 2013, the Plaintiff filed a grievance regarding the alleged denial of treatment, and was told by Dr. Moody that the Defendants had made the decision not to permit Plaintiff treatment for her GID based on S.O.P. VH47-0006.   "On 8/15/13, Dr. Moody told me that he had been in communication with Drs. Nichols and Lewis, and it was their decision pursuant to S.O.P. VH47-0006 not to provide me any treatment."   *Id.* at pp. 6-7.   Plaintiff maintains that "Mental Health Counselor DeWese and psychologist Dr. Harrison attempted to argue on my behalf . . . but to no avail."   *Id.* at p. 7.   Medical records attached to Plaintiff's Complaint reflect a diagnosis of GID in October 2013, and a notation that Plaintiff suffers "significant distress associated with incongruence between natal gender and experienced gender, persistent desire to be rid of male sexual characteristics and with pre-incarceration intervention (self-administered hormone therapy and surgical alteration [of] 2d characteristics). . .   significant distress and impairment in multiple areas of functioning"   *Id.* at

pp. 14,15.

*Eleventh Amendment immunity – official capacity money damages claims*

In both of their motions to dismiss, the Defendants contend that Plaintiff's official capacity money damages claims are barred by the Eleventh Amendment.   Insofar as the Plaintiff brings this action against the Defendants in their official capacities for money damages, the Plaintiff's claims are without merit.   The Eleventh Amendment bars § 1983 suits brought against a state, as Congress has not abrogated Eleventh Amendment immunity and the State of Georgia has not consented to suit.   *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012).   "Eleventh Amendment immunity   . . . extends to state officials sued in their official capacities when, for all practical purposes, the state is the real substantial party in interest."   *Cobb v. D.T. Marshall*, 481 F. Supp. 2d 1248, 1257 (M.D.Ala. 2007).   Additionally, a state is not considered a "person" subject to suit for money damages under § 1983, such that "neither a state nor its officials acting in their official capacities are 'persons' under § 1983".   *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989).   Thus, a suit brought against defendant prison officials in their official capacities for money damages is in reality a suit against the state and as such is not cognizable under § 1983. *Id.*

*Individual capacity claims*

The Defendants assert that the Plaintiff has failed to state a claim of deliberate indifference against them in their individual capacities, as Plaintiff has not alleged that Defendants were subjectively aware of and disregarded a serious risk of harm to the Plaintiff.

The Defendants do not dispute that Plaintiff's diagnosed GID condition is a serious medical condition.   Other Courts have acknowledged or assumed that GID can be a serious medical condition for purposes of an Eighth Amendment deliberate indifference claim.   *Kothmann v.*

6

*Rosario*, 558 F. App'x. 907 (11th Cir. 2014) (recognizing GID as a serious medical need); *White v. Farrier*, 849 F.2d 322 (8th Cir. 1988) (acknowledging that transsexualism is a serious medical condition); *Praylor v. Texas Dep't. of Criminal Justice*, 430 F.3d 1208 (5th Cir. 2005) (assuming without deciding that transsexualism does present a serious medical need); *Phillips v. Michigan Dep't. of Corr.*, 731 F.Supp. 792 (W.D.Mich. 1990), *affirmed*, 932 F.2d 969 (6th Cir. 1991) (transsexualism is a serious medical need for purposes of the Eighth Amendment); *Fields v. Smith*, 653 F.3d 550 (7th Cir. 2011) (plaintiff suffered from a serious medical need in the form of GID; defendants conceded that GID is a serious medical condition); *Meriweather v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (transsexualism is a serious medical need); *Howard v. Green*, 2011 WL 4969599 (M.D.Ga. 2011) (CHW), *adopted in* 2011 WL 4975852 (court assumes for purposes of a motion to dismiss that GID is a serious medical need).

The Defendants do assert that the Plaintiff has not shown that she faces a risk of serious harm in the absence of the requested hormone therapy.   In order for a substantial risk of serious harm to exist, the condition must be "sure or very likely to cause serious illness and needless suffering" and give rise to "sufficiently imminent dangers".   *Baze v. Rees*, 553 U.S. 35, 49-50 (2008).   The Defendants also maintain that the Plaintiff is receiving mental health treatment for her GID and that therefore Plaintiff cannot show deliberate indifference by the Defendants to Plaintiff's condition.

In *Kothmann v. Rosario*, 558 F. App'x. 907 (11th Cir. 2014)[2], the Eleventh Circuit found that the following factual allegations were sufficient to state a claim of deliberate indifference to an inmate's GID condition by defendant medical personnel:

> [that] (1) [i]n the medical community, hormone therapy is the

---

[2]  The Court notes that *Kothmann* is an unpublished decision, and as such, is "not considered binding precedent, but . . . may be cited as persuasive authority."   11th Cir. R. 36-2.

> medically recognized, accepted and appropriate treatment for GID; (2) [the medical professional defendant] knew of [the plaintiff's] GID diagnosis, his hormone treatment history, and his medical need for continued hormone treatment; and (3) [the medical professional defendant] knowingly refused to provide [the plaintiff] with his medically necessary hormone therapy for his GID.   Taking these allegations as true, we hold that [the plaintiff] has alleged facts sufficient to show that [the medical professional defendant] knew that hormone treatment was the recognized, accepted, and medically necessary treatment for [the plaintiff's] GID, yet knowingly refused [the plaintiff's] repeated requests for such treatment and thus was deliberately indifferent to a serious medical need.

*Id.* at p. 911.

Importantly, the Eleventh Circuit noted that

> [a]t this Rule 12(b)(6) stage, we do not decide whether hormone therapy in fact was medically necessary to treat [the plaintiff's] GID or whether [the defendant] knew in fact that hormone treatment was medically necessary for [the plaintiff].   Nor do we address what other kinds of treatment could adequately address [the plaintiff's] GID or whether [the defendant] actually provided other adequate treatment to [the plaintiff].   Our review is limited to the four corners of the complaint, and the complaint alleges sufficient facts to survive [the defendant's] motion to dismiss.

*Id.*

Other courts have held that the standards for GID treatment set out by the World Professional Association for Transgender Health ("WPATH) are the accepted standards for GID treatment in the medical community. Based upon the record before it, the court in *Glenn v. Brumby*, 724 F. Supp. 2d 1284 (N.D.Ga. 2010) found "sufficient evidence that statements of WPATH [World Professional Association for Transgender Health] are accepted in the medical community", and that "WPATH recommends a triadic therapeutic protocol for the treatment of GID, which includes: 1) hormone therapy; 2) a real-life experience ("RLE") by living full-time as a member of the new gender; and 3) sex reassignment surgeries."   *Glenn*, 724 F. Supp. 2d at 1289,

n.4.

The Court notes that in certain circumstances, deliberate indifference can be shown by prison doctors taking an easier and less efficacious route.  *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Plaintiff alleges that "[p]sychotherapy has been acknowledged as the appropriate instrument to monitor the mental welfare of the transsexual patient during his/her transistion [sic]; but is generally not considered a 'treatment' for GID."  (Doc. 1, p. 5).  Plaintiff also states in her initial Complaint that "I consumed female hormones illicitly from age 15 on up". (Doc. 1).  Further, Plaintiff alleges that as a result of the lack of continued hormone therapy, she suffers from nausea, dizziness, acid reflux, headaches and vomiting, as well as depression, anxiety, lethargy and preoccupation with genital mutilation and self-castration.

Although the Defendants attempt to distinguish Plaintiff's factual situation and the allegations presented in *Kothmann*, Plaintiff herein alleges that Defendants were aware that she had undergone hormone treatment for her GID condition since the age of 15, and were aware of her past surgical intervention, as reflected in Plaintiff's prison medical records.   (Doc. 1, p. 14) (prison medical records reflecting Plaintiff's "persistent desire to be rid of male sexual characteristics with pre-incarceration intervention (self-administered hormone therapy and surgical alteration 2d characteristics))".   Based on this information, combined with reference to the accepted medical standards for GID treatment issued by WPATH and the American Medical Association, Plaintiff has sufficiently alleged that the Defendants knew that the requested treatment was medically necessary.

The Defendants further maintain that Plaintiff cannot show subjective knowledge on their part that the Plaintiff suffered from a serious medical need.   "[T]here must be evidence in the record of such subjective awareness of the medical need."  *McElligott v. Foley,* 182 F.3d 1248,

1255 (11th Cir. 1999).   A defendant's "subjective knowledge [of the risk] must be specific, as [the Eleventh Circuit has] held that 'imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.'"   *Bugge v. Roberts*, 430 F. A'ppx. 753, 759 (11th Cir. 2011) *quoting Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

In addition to alleging that she sent letters to each of the Defendants detailing her condition, her past hormone usage, and her need for continued hormone therapy, Plaintiff alleges in her affidavit attached to her Complaint that she was told that "the decision of the GDC's Medical Director, Mr. Nichols, did not permit them to treat me."   (Doc. 1-2, ¶ 8).   Plaintiff's mental health counselor Mr. McCoy "reiterated that Drs. Lewis and Nichols directed him to refer me to policy # VH47-0006."   *Id.* at ¶ 18.   Moreover, on November 20, 2013, Defendant Lewis appears to have authored a response to Plaintiff's grievance that set out the details of Plaintiff's condition and need for hormone therapy, stating that "[i]t is concluded that medical personnel handled this case appropriately and no further action is warranted."   (Doc. 1-1, p. 3; Doc. 28-1).   As such, Defendant Lewis was subjectively aware of the Plaintiff's condition and alleged needs.   *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007) (defendant was "obviously aware of the contents of [plaintiff's] complaint because he responded to it".).

As in *Kothmann*, the Plaintiff herein has alleged that she suffers from GID, for which the medically recognized and accepted treatment is hormone therapy, that each of the Defendants knew of this diagnosis, of Plaintiff's history of hormone usage, and of her medical need for continued hormone treatment, and that each of the Defendants knowingly refused to provide Plaintiff with the medically necessary hormone therapy for her GID, pursuant to GDOC policy. With a review limited to the Complaint, and taking Plaintiff's factual assertions as true, the Plaintiff has alleged sufficient facts to state a claim of deliberate indifference against the

Defendants.

In regard to the Defendants' subjective knowledge of a serious medical need, the Court notes that Defendants assert that the decision regarding Plaintiff's treatment was a medical decision made on an individual basis, and was not just a policy decision, and state that "Plaintiff does not allege that the Defendants were unaware of her medical records and the care she was receiving at GDC." (Doc. 34-1, p. 11).   Defendants also acknowledge, for purposes of qualified immunity, that they had discretionary authority regarding decisions on medical care to be provided to an inmate.   (Doc. 34-1, p. 14).

Although Defendants appear to admit that they had discretionary authority over medical care decisions, they do not appear to have been directly involved in Plaintiff's care, as was the defendant doctor in *Kothmann,* 558 F. App'x. at 907 (defendant was Chief Health Officer at correctional institution where plaintiff was housed).   However, Plaintiff's allegations include the claim that the Defendants are liable based on their enforcement of the policy at issue, which Plaintiff alleges was used to deny her medical care and treatment.   "Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions."   *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010).   "[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).

*Conspiracy claim*

In her Amended Complaint (Doc. 18), the Plaintiff asserts that the Defendants participated

in a conspiracy to deny her needed medical treatment.   As the Defendants point out, a plaintiff asserting a § 1983 conspiracy claim must allege that the conspiracy resulted in the actual denial of an underlying constitutional right, and that the parties "reached an understanding to deny the plaintiff his or her rights".   *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990); *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1346 (S.D.Fla. 2012).   Plaintiff does not set forth more than a conclusory allegation of conspiracy, and this claim accordingly fails.

*Qualified immunity*

To the extent that the Defendants maintain that they are entitled to the protection of qualified immunity, the Eleventh Circuit noted in *Kothmann* that "by 1986, it was well settled in this Circuit that intentionally refusing to provide medically necessary treatment constitutes deliberate indifference and violates the Eighth Amendment.   *Kothmann*, 558 F. App'x. at 912.   Accepting the allegations of the Complaint as true for purposes of the motions to dismiss, the Defendants knew "hormone treatment to be the accepted, medically necessary treatment for [the Plaintiff's] GID" when refusing same beginning in 2013.   *Id.*   As such, Plaintiff has alleged facts sufficient to show that the Defendants violated a clearly established constitutional right.   *Id.* Thus, Defendants are not entitled to qualified immunity at this point in the proceedings.

*Relief sought*

The Defendants also assert that Plaintiff's claim for injunctive relief is overly broad, and that Plaintiff cannot recover monetary or nominal damages under § 1983 without allegations of a more than *de minimis* physical injury.   In her original Complaint, the Plaintiff asks for '[a]declaration that the actions and omissions described herein violated Plaintiff's rights under State law and the Constitution of the United States [and] [a] preliminary and permenant [sic] injunction ordering the defendants to prescribe and provide gender-affirming therapies, such as

hormone therapy, for the Plaintiff and psychotherapy; instructing the policy discontinued." (Doc. 1, pp. 12-13). Further, the Plaintiff seeks an evaluation by a medical professional outside of the prison system and electrolysis treatment. *Id.* at p. 13.

The PLRA limits the courts' ability to grant overly broad prospective relief, requiring that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). As such, this Court's grant of any injunctive relief in this § 1983 action is required to be narrowly drawn, and therefore any overly broad request, as drafted by the *pro se* Plaintiff, would be tailored accordingly. *Thomas v. Bryant*, 614 F.3d 1288, 1317-18 (11th Cir. 2010) (courts must ensure that scope of requested injunctive relief does not exceed the identified harm and meets the requirements of the PLRA, noting courts' broad discretion in fashioning equitable relief). Regardless of the ultimate relief granted, federal courts "may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 131 S.Ct. 1910, 1929 (2011) (finding that PLRA should not be interpreted to unduly restrict federal courts' authority to fashion practical remedies in face of constitutional violations). The Court finds that any restriction or elimination of the injunctive relief sought by Plaintiff would be premature at this point.

In regard to the Defendants' assertion that Plaintiff has alleged only *de minimis* physical injuries, and therefore cannot recover compensatory or punitive damages under § 1997e(e), it is not clear at this point whether Plaintiff's physical injury allegations consist of more than *de*

*minimis* injuries.   Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Eleventh Circuit has concluded that "the physical injury must be more than *de minimis*, but need not be significant."   *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated in part on other grounds in Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc).

Plaintiff has alleged physical injuries in the form of nausea, dizziness, reflux, headaches, vomiting, and leg pain, as well as self-mutilation injuries.   (Doc. 1, p. 6; Doc. 1-1, p.3).   Some courts have found certain of these injuries to be only *de minimis* in nature.   *Quinlan v. Personal Transp. Servs. Co.*, 329 F. A'ppx. 246, 249 (11th Cir. 2009) (detainee's complaints of chest and back pain did not constitute more than *de minimis* physical injury); *Williams v. Allen*, 2014 WL 2547804 (M.D.Ga. 2014) (finding headaches to be *de minimis* injury); *Alexandar v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (vomiting and nausea found to be *de minimis* injuries).

However, the Eleventh Circuit has noted that "[t]he meaning of the phrase 'greater than de minimis,' is far from clear."   *Chatham v. Adcock*, 334 F. A'ppx. 281, 284 (11th Cir. 2009).   Other courts have found that plaintiffs with injuries similar to those alleged by Plaintiff have alleged an adequate physical injury.   *See Kemner v. Hemphill*, 199 F. Supp. 2d 1264 (N.D.Fla. 2002) (prisoner who was sexually assaulted for two hours, and suffered cuts, bruises, and abrasions and was so physically ill that he vomited alleged sufficient physical injury for § 1997e(e) purposes); *Wolfe v. Horn*, 130 F. Supp. 2d 648 (E.D.Pa. 2001) (court found that transsexual plaintiff who claimed to suffer headaches, nausea, vomiting, and other symptoms following termination of

14

hormone therapy had stated adequate physical injury for § 1997e(e) purposes); *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006) (holding that plaintiff's allegations of headaches, cramps, nosebleeds, and dizziness, resulting from denial of prescribed blood pressure treatment, survived § 1997e(e) review).   As the Defendants note, the Eleventh Circuit has apparently not yet ruled on whether injuries of a self-inflicted nature, such as certain of those alleged by Plaintiff, can constitute *de minimis* injuries for PLRA purposes.   Further factual development of Plaintiff's claims could establish an adequate physical injury for PLRA purposes. *See Knighten v. Stanton*, 2014 WL 1331026 (S.D.Ala. 2014) (finding that plaintiff's allegations of bruising on his ribs surmounted § 1997e(e)'s bar, as plaintiff put forth evidence from which a jury could determine that his physical injuries were more than *de minimis.*).

Even if the Plaintiff is not entitled to monetary damages under § 1983 based on his lack of a claim for more than *de minimis* physical injury, this Court has found that nominal damages may be recovered under the PLRA.   *Chastain v. Barber*, 2010 WL 3717300 *1 (HL) (M.D.Ga., Sept. 9, 2010); *Williams*, 2014 WL 2547804 at *2.   In general, courts have noted that the issue of whether nominal damages are available under the PLRA for a plaintiff who has not alleged a physical injury remains unresolved by the Eleventh Circuit, but that such damages appear to be available.   *Cassady v. Walker*, 2014 WL 1320095 n.15 (S.D.Ga., March 31, 2014); *Smith v. Barrow*, 2012 WL 6519541 *4 (S.D.Ga., Nov. 9, 2012).

*Conclusion*

Inasmuch as the Court finds that Plaintiff has stated Eighth Amendment claims of deliberate indifference by the Defendants in their refusal to provide Plaintiff with necessary treatment for her GID condition, it is the recommendation of the undersigned that the Defendants' motions to dismiss be accordingly **DENIED in part**.   It is further recommended

that Defendants' motions to dismiss be **GRANTED in part**, regarding the Plaintiff's official capacity money damages claims and conspiracy claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.   The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.   In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 2nd day of February, 2015.


s/   *THOMAS Q. LANGSTAFF*

UNITED STATES MAGISTRATE JUDGE


asb

16