**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

|   |   |
|---|---|
| **CHRISTOPHER A. LYNCH**, <br><br> Plaintiff, <br><br> v. <br><br> **SHARON LEWIS, M.D. and BILLY NICHOLS, M.D.**, <br><br> Defendants. | <br><br><br><br> Civil Action No. 7:14-CV-24 (HL) |

**ORDER**

This case is before the Court on a Recommendation from United States Magistrate Judge Thomas Q. Langstaff. (Doc. 66). Judge Langstaff recommends granting Plaintiff's Motion for Reconsideration (Doc. 42); granting Plaintiff's motion to clarify the allegations set forth in his Complaint but denying his Motion to Amend (Doc. 47); denying Plaintiff's Motion for Appointment of Counsel (Doc. 62); and granting in part and denying in part Defendants' motions to dismiss (Docs. 34, 53). Specifically, Judge Langstaff recommends that Defendants' motions to dismiss Plaintiff's official capacity money damages claims and conspiracy claims be granted. However, Judge Langstaff opines that Plaintiff has met the pleading requirements for his Eighth Amendment claims of deliberate indifference by Defendants in their refusal to provide Plaintiff with necessary

treatment for his gender identity disorder ("GID") and that Defendants' motions to dismiss these claims should be denied.

Defendants filed timely objections to the recommendation. Defendants object only to those portions of the recommendation denying their motions to dismiss and take no issue with the dismissal of Plaintiff's official capacity and conspiracy claims.

## I. BACKGROUND

Plaintiff Christopher, a/k/a "Christina", Lynch identifies himself in his Complaint as a 22-year old transsexual female with a gender identity disorder ("GID"). Plaintiff states that since the age of 9 he has dressed and presented himself to the world as a female. He has also been employed as a female. Beginning at age 15, Plaintiff began self-prescribing female hormones that he admittedly acquired illicitly. At age 16, he was hospitalized following a suicide attempt after a teacher told him that he would never be a girl. (Doc. 1-2, p. 4).

Plaintiff has been incarcerated since age 19. Upon entering the prison system, Plaintiff no longer had access to the female hormones he had been taking prior to commencing his prison term in 2012, though he states that he attempted to continue self-medicating through the purchase of "hormones from inmates whom [sic] had prescriptions from non-prison physicians." (Doc. 1-2, p. 2). He began seeking treatment for her transsexualism while confined at Johnson State Prison, where he received an unofficial diagnosis of GID from psychiatrist

Dr. McKinnon. Plaintiff alleges that when he arrived at Valdosta State Prison on July 23, 2013, he again notified prison officials of his GID and began seeking an official diagnosis and treatment for the condition, including hormone therapy. Plaintiff spoke both with counselors and facility physician Dr. Raymond Moody about the physical and mental symptoms she was experiencing as a result of the discontinuation of his self-prescribed hormone therapy. He described feelings of nausea, dizziness, acid reflux, headaches, and vomiting. Plaintiff further reported his depression, anxiety, lethargy, and preoccupation with genital mutilation and self-castration. He also revealed that he cut his wrist and his arm.

On August 5, 2013, Plaintiff filed a grievance alleging denial of treatment for his GID. On August 9, 2013, Dr. Moody informed him that Defendants Sharon Lewis, Medical Director for the Georgia Department of Corrections, and Billy Nichols, State Medical Director for Georgia Correctional Health Care, determined that Plaintiff did not meet the requirements to be treated for his GID based on S.O.P. VH47-0006, a policy Plaintiff states "makes arbitrary distinctions between transsexuals that have been treated prior to incarceration and transsexuals that have not." (Doc. 1, p. 6). Dr. Moody confirmed again on August 15, 2013 the decision of Defendants not to provide Plaintiff treatment. Plaintiff maintains that "Mental Health Counselor DeWese and psychologist Dr. Harrison attempted to argue on my behalf . . . but to no avail." (Doc. 1, p. 7).

Plaintiff alleges that on August 20, 2013, he wrote a four-page letter to both Defendants. (Doc. 1-1, pp. 8-22). In her letters, he "beseeched them to provide care, to at least make their decision based upon sound medical judgment rather then [sic] policy." (Doc. 1, p. 7). He wrote to Defendants again on September 26, 2013. (Doc. 1-1, pp. 17-18). Defendant Lewis appears to have authored a response to Plaintiff's continued grievance on November 20, 2013, concluding "that medical personnel handled this case appropriately and no further action is warranted." (Doc. 1-1, p. 3; Doc. 28-1).

Plaintiff continues to seek medical treatment for his GID. Plaintiff attached medical records from October 2013 to his Complaint reflecting a diagnosis of GID. (Doc. 1, pp. 14-16). The records further note that Plaintiff suffers "significant distress associated with incongruence between natal gender and experienced gender, persistent desire to be rid of male sexual characteristics and with pre-incarceration intervention (self-administered hormone therapy and surgical alteration 2d characteristics)." (Doc. 1, p. 14). He reports a "[d]esire to live as the other sex, persistent discomfort and sense of inappropriateness in gender role of male, preoccupation with ridding self of sexual characteristics of male, significant stress and impairment in multiple areas of functioning." (Doc.1, p. 15).

Plaintiff avers that the American Medical Association has articulated that the appropriate standard of care for GID is hormone therapy and surgery. He notes that while psychotherapy is an acknowledged instrument to monitor the

4

mental welfare of a transsexual patient, it generally is not considered treatment for GID. He further articulates that the Harry Benjamin Standards of Care published by the World Professional Association for Transgender Health ("WPATH") should be applied and that Defendants' failure to abide by the recognized standard of care "disregarded my needs and disregarded degrees of contemporary care with callous and deliberate indifference; not even bothering with the pretense of caring or offering a less effective remedy." (Doc. 1, p. 8). As a result, he has resorted to self-mutilation of his wrist, arm, thigh and genitals, is experiencing severe depression, insomnia, and an immeasurable increase of manic-anxiety, psychological breakdowns, self-loathing, and a desire to be rid of his facial hair and other male characteristics . (Doc. 1, p. 8).

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1),  within fourteen (14) days of the magistrate judge's report and recommendation, a party may submit written objections to the recommendation. The district court then shall conduct a *de novo* review of the portions of the recommendation to which the party objects. Id.; see also LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988). The court may accept, reject, or modify the findings or recommendations of the magistrate. Id.

## III.  DISCUSSION

Defendants object to the magistrate's recommendation on three grounds. First, Defendants reiterate their contention that Plaintiff has failed to state a claim

5

for an Eighth Amendment violation for deliberate indifference as he has not alleged that Defendants had knowledge of a serious risk of harm posed to Plaintiff in failing to provide him treatment for his GID. Next, Defendants maintain that the magistrate erred in determining that Defendants are not entitled to qualified immunity. Finally, Defendants object to the magistrate's finding that dismissal of Plaintiff's claim for injunctive relief would be premature.

### A. Eighth Amendment Claims

Defendants argue that the magistrate erred in determining that Plaintiff adequately articulated a cognizable Eighth Amendment claim for deliberate indifference. According to Defendants, Plaintiff has failed to demonstrate Defendants' subjective knowledge that he faced a risk of serious harm if not prescribed treatment, including hormone therapy, and, even assuming that GID is a serious medical need, his conclusory allegations that Defendants failed to exercise sound medical judgment in denying his request for hormone therapy do not meet the requirements for a claim of deliberate indifference.

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v.

Avado Brands, Inc., 187 F.3d 1271, 1273 n. 1 (11th Cir. 1999). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 557 (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. Id. at 556. Rule 12(b)(6) does not permit dismissal of a complaint "simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 556).

While there is no Eighth Amendment guarantee for any particular type of medical treatment, it is well established that the prison must provide constitutionally adequate treatment. See Estelle v. Gamble, 429 U.S. 97, 103-06 (1976). A prison official's "deliberate indifference to a serious medical need"[1]

---

[1] Defendants, without conceding, do not object to the presumption that GID constitutes a serious medical need for the purposes of the pending motions to dismiss. (Doc. 34-1, p. 8). However, as noted by the magistrate in his recommendation, other courts have acknowledged or assumed that GID can be a serious medical need for purposes of an Eighth Amendment deliberate indifference claim. See Kothman v. Rosario, 558 F. App'x. 907 (11th Cir. 2014) (recognizing GID as a serious medical need); White v. Farrier, 849 F.2d 322 (8th Cir. 1988) (acknowledging that transsexualism is a serious medical condition); Praylor v. Texas Dep't. of Criminal Justice, 430 F.3d 1208 (5th Cir. 2005) (assuming without deciding that transsexualism does present a serious medical need); Phillips v. Michigan Dep't. of Corr., 731 F.Supp. 792 (W.D.Mich. 1990),

violates the Eighth Amendment. Id. at 106. To survive a motion to dismiss, a plaintiff must demonstrate "that a defendant (1) had 'subjective knowledge of a risk of serious harm,'' (2) disregarded that risk, and (3) did so by conduct that was more than mere negligence." Kothman v. Rosario, 558 Fed. App'x 907, 910 (11th Cir. 2014) (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)); see also Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 (11th Cir. 1997) ("[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.").

Defendants object to the magistrate's conclusion that Plaintiff pled sufficient facts to establish Defendants' subjective knowledge of Plaintiff's GID condition and knew that the treatment requested by Plaintiff was medically necessary. According to Defendants, there is no evidence that Defendants reviewed or had knowledge of any of the medical records, grievances, or letters attached to Plaintiff's Complaint, and, even if Defendants were aware of any of these documents, the records themselves do not show that hormone therapy is medically necessary, that Plaintiff faced a risk of serious harm in the absence of

---

*affirmed*, 932 F.2d 969 (6th Cir. 1991) (transsexualism is a serious medical need for purposes of the Eighth Amendment); Fields v. Smith, 653 F.3d 550 (7th Cir. 2011) (plaintiff suffered from a serious medical need in the form of GID; defendants conceded that GID is a serious medical condition); Meriweather v. Faulkner, 821 F.2d 408 (7th Cir. 1987) (transsexualism is a serious medical need); Howard v. Green, 2011 WL 4969599 (M.D.Ga. 2011) (CHW), *adopted in* 2011 WL 4975852 (court assumes for purposes of a motion to dismiss that GID is a serious medical need).

hormone therapy, or that any proposed intervention strategy by the prison physicians is inadequate to avoid substantial risk of harm. Additionally, Defendants call into question the magistrate's reliance on the Plaintiff's reference to noted standards of treatment for GID issued by WPATH and the American Medical Association in support of the conclusion that these particular standards demonstrate Defendants' subjective knowledge of the standards and the medical necessity of the particular treatment requested by Plaintiff.

  The Court's review of the case is restricted to the facts as alleged in Plaintiff's Complaint. See Erickson v. Pardus, 551 U.S. 89 (2007). Here, Plaintiff alleges that (1) he has a GID; (2) Defendants were aware of Plaintiff's GID diagnosis, past use of hormones, and his medical need to continue hormone treatments; (3) Plaintiff has attempted to harm himself as a result of the denial of treatment and is at risk of serious future harm without treatment; (4) the medical community recognizes hormone therapy as an appropriate treatment for GID; and (5) Defendants knowingly refused to provide Plaintiff with the medically necessary hormone treatment. At this stage, the Court is not called upon to determine whether hormone therapy is, indeed, medically necessary to treat Plaintiff's condition or whether Plaintiff even has a constitutional right to request this specific type of treatment for his GID, nor is the Court in a position to determine whether Defendants actually knew that hormone therapy is medically necessary for this particular Plaintiff. Rather, the Court must only determine

whether based on the four corners of the Complaint Plaintiff alleged sufficient facts that, taken as true, set the groundwork for a plausible claim of deliberate indifference for failure to treat Plaintiff for GID. The Court agrees with the magistrate judge that Plaintiff has satisfied that requirement and overrules Defendants' objection.

### B.    Qualified Immunity

Defendants next object to the magistrate's finding that Defendants are not entitled to qualified immunity and assert that the magistrate applied too general a standard. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The Supreme Court has established a two-part inquiry for qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730 (2002). "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Accepting the allegations set forth in Plaintiff's Complaint as true, Plaintiff has established an Eighth Amendment claim for deliberate indifference. Plaintiff

alleges that he has been denied hormone therapy, which he claims is medically necessary to treat his GID and which he alleges Defendants knew was the appropriate treatment for his condition. The question now before the Court is whether there is a clearly established constitutional right to receive medically necessary treatment and whether denial of that right amounts to deliberate indifference.

Defendants urge the Court to narrow the focus of the qualified immunity analysis to address specifically whether there is a clearly established right to receive hormone therapy. As discussed above, at the motion to dismiss stage, the Court is not deciding whether the particular treatment requested by Plaintiff legitimately is medically necessary to treat his disorder or whether he has a right to demand a specific course of treatment. Rather, the Court shall only address whether the law of this circuit recognizes that refusal to provide medically necessary treatment constitutes deliberate indifference and violates the Eighth Amendment. The Court finds that principle to be well established in the Eleventh Circuit. See H.C. v. Jarrard, 786 F.2d 1080, 1086 (11th Cir. 1986); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) ("The knowledge of the need for medical care has consistently been held to surpass negligence and constitute deliberate indifference."). Accordingly, the Court affirms the magistrate's recommendation and overrules Defendants objection.

### C.    Injunctive Relief

In their motions to dismiss Defendants assert that Plaintiff's claim for injunctive relief is overly broad and that Plaintiff cannot recover monetary or nominal damages under § 1983 without allegations of more than a *de minimis* physical injury. The magistrate denied Defendants' motion on this basis, finding that "any restriction or elimination of the injunctive relief sought by Plaintiff would be premature at this point." (Doc. 66, p. 13). The Court agrees and rejects Defendants' generalized objection.

### IV.    CONCLUSION

Accordingly, after conducting a *de novo* review, the Court overrules Plaintiff's objections. The Court accepts and adopts the Recommendation and grants in part and denies in part Defendants' motions to dismiss.

**SO ORDERED**, this 23rd day of March, 2015.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks